IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

JENNIFER B.,

     Plaintiff,

v.                                   CIVIL ACTION NO. 2:23-cv-00503

MARTIN J. O'MALLEY
Commissioner of Social Security,[1]

     Defendant.


### PROPOSED FINDINGS & RECOMMENDATION

Plaintiff Jennifer B. ("Claimant") seeks review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–33, and Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f. This matter was referred to the undersigned United States Magistrate Judge by standing order to consider the pleadings and evidence and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 3). Presently pending before this Court are Claimant's Brief in support of remand (ECF No. 7), the Commissioner's Brief in Support of Defendant's Decision (ECF No. 8), and Claimant's Reply Brief (ECF No. 9). Having fully considered

---

[1] Commissioner O'Malley was substituted in place of Acting Commissioner Kilolo Kijakazi following O'Malley's appointment on December 20, 2023, and is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d). *See* 42 U.S.C. § 405(g) (explaining § 405(g) action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT** Claimant's request to reverse the Commissioner's decision (ECF No. 7), **DENY** the Commissioner's request to affirm his decision (ECF No. 8), **REVERSE** the final decision of the Commissioner, and **REMAND** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

## I.    BACKGROUND

### A. *Information about Claimant and Procedural History of Claim*

Claimant was 45 years old at the time of her alleged disability onset date and 55 years old on the date of the decision by the Administrative Law Judge ("ALJ"). (Tr. 25, 307-09).[2] She has a four-year college education. (Tr. 349). She has a past work history as a secondary-school teacher. (Tr. 350, 374). Claimant alleges that she became disabled on February 20, 2013, due to prior substance abuse with anxiety—including social anxiety—and depression; problems with memory, concentration, and focus; migraines and trouble sleeping; ruptured lumbar disc with pinched nerve; trouble standing for long periods of time; history of left-ankle fracture with status post-surgery; Barrett's esophagus; abdominal hernia; and bursitis of the right shoulder. (Tr. 307-09, 348).

Claimant filed her application for benefits on October 18, 2018. (Tr. 324-25). Her claim was initially denied on February 8, 2019, and again upon reconsideration on July 1, 2019. (Tr. 133-73). Thereafter, on August 20, 2019, Claimant filed a written request for hearing. (Tr. 174-75). An administrative hearing was held before an ALJ via telephone on February 16, 2022. (Tr. 35-50). The administrative hearing was cut short, and the ALJ set

---

[2] All references to "Tr." refer to the Transcript of Proceedings filed in this action at ECF No. 6.

a consultative examination for the Claimant. *Id.* Subsequently on October 7, 2022, the ALJ held a supplemental administrative hearing, which was also via telephone. (Tr. 37; 51-64). A Vocational Expert and the Claimant testified during the hearing. (Tr. 56-64). The Claimant was represented by counsel during these proceedings. (Tr. 62-64). On November 22, 2022, the ALJ entered an unfavorable decision. (Tr. 11-34). Claimant then sought review of the ALJ's decision by the Appeals Council on December 29, 2022. (Tr. 304-05). The Appeals Council denied Claimant's request for review on June 6, 2023, and the ALJ's decision became the final decision of the Commissioner on that date. (Tr. 1-6).

Claimant timely brought the present action on July 27, 2023, seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner filed a transcript of the administrative proceedings on September 19, 2023. (ECF No. 6). Claimant subsequently filed her Brief – Social Security (ECF No. 7) on October 18, 2023, and in response, the Commissioner filed his Brief in Support of Defendant's Decision (ECF No. 8) on November 15, 2023. Claimant then filed her Reply Brief on November 28, 2023. (ECF No. 9). As such, this matter is ripe for resolution.

### B. Relevant Evidence

The undersigned has considered all evidence of record pertaining to Claimant's arguments and summarizes the relevant portions[3] here for the Court.

### 1. Treatment Records

In February 2013, Claimant was voluntarily admitted to WVU Medicine for help with her substance use. (Tr. 463-74). Records reflect generally tired or flat moods, but linear thought processes with no suicidal or homicidal ideation. (Tr. 463-74).

---

[3] As Claimant's assertions of error are limited to her claimed mental-health impairments, the physical impairments alleged in Claimant's application for benefits are not relevant to this Court's § 405(g) review.

Between 2014 and 2016, the Claimant treated with psychiatric services at Highland Health Center, where she was routinely observed to have stable mood and broad affect, appropriate appearance, direct eye contact, intact judgment, and normal thought processes and content. (Tr. 495-96, 498-99, 501-02, 504-05, 507-08, 510-11, 513-14, 516). At other times, Claimant was observed to have an anxious mood; anxious affect; restricted affect; sad affect; depressed mood; psychomotor agitation; slow speech; impaired judgment or insight; disorganized thought process; poor insight; lethargy; and a constricted, flat, sad, or restricted affect. (*Id.*; *see also* Tr. 612; 617; 661; 677; 744; 2034; 2415; 2420; 2431; 2443; 2628; 2882; 2885; 2888). Claimant reported in April 2015 that her depression was "a whole lot better," that she had been "pretty stable recently," and that her moods had improved with improvements in the weather. (Tr. 512). Similarly, in October 2015, Claimant denied feeling depressed entirely. (Tr. 506).

By March 2019, Claimant completed an intake form for Oasis Behavioral Health, again reporting experiencing another cycle of depression and anxiety (Tr. 617). While on mental examination the Claimant demonstrated a depressed and anxious mood with slow speech and impaired judgment, she was also noted to be fully oriented to all spheres, displayed relevant thought content and goal-directed thought process, and she had fair attention, with no suicidal ideation. (Tr. 617-18).

Subsequently, between November 2019 and February 2020, Claimant treated with OneWorld Community Health Centers for, *inter alia*, her mental impairments. (Tr. 694-704). During one of these visits, Claimant reported that her medications were "improving her symptoms and help[ing her] to feel better" (Tr. 700). On mental status examination, she displayed normal appearance, cooperative attitude, normal psychomotor behavior, euthymic mood, normal speech, logical thought process and content, no cognitive

impairment, normal judgment, good insight, and normal perception (Tr. 701). In October 2020, Claimant was admitted to Highland Health Center for her substance use (Tr. 2463-69). During a mental status examination at Highland, Claimant was noted to demonstrate an appropriate appearance, adequate hygiene, and good eye contact. (Tr. 2465). Although her insight, judgment, and impulse control were impaired, she had a euthymic mood and cooperative attitude, logical thought process, and good recent and remote memory; further, she denied suicidal ideations or hallucinations. (Tr. 2465).

Between October 2021 and November 2021, Claimant treated at Mountain State Recovery Center. (Tr. 2471-98). During mental status exams she showed normal speech, appropriate mood and affect, logical thought processes, realistic judgment, normal insight, full orientation, normal recent and remote memory, and normal attention and concentration. (Tr. 2476, 2488-89). Similarly, between January 2022 and February 2022, Claimant was voluntarily admitted to St. Francis Hospital's Addiction Healing Center. (Tr. 210-2448). During a mental status exam, she was noted to demonstrate a tired mood but also was alert and calm, with normal speech, goal directed thought process, normal perception, no memory deficits, fair insight, and fair judgment. (Tr. 2437).

### 2. Claimant's Testimony

Claimant testified regarding her mental impairments at the administrative hearings. (Tr. 40, 62-64). She reported feeling depressed and anxious, not going out much, and needing her daughter to help her with things. (Tr. 40). Claimant also testified that she had experienced difficulties with substance abuse, which had adverse impacts on her mental state. (Tr. 62-63). Furthermore, Claimant completed a Function Report in 2019 addressing her mental impairments. (Tr. 396-403). Therein, she reported difficulty comprehending and following more than 1-step directions and characterized

her memory and attention as "terrible." (Tr. 396). She also stated that she had anxiety around groups of people and felt depressed "a lot of the time." (Tr. 396). Regarding her daily activities, Claimant reported watching television; using social media; doing chores such as laundry or dusting; shopping for groceries; spending time with her daughter, neighbor, boyfriend, and niece; and sometimes painting. (Tr. 397-400).

### 3. *State-Agency Administrative Findings*

On February 6, 2019, the State Agency, relying in part on the opinion of James Binder, M.D., found at the initial level of review that Claimant had severe mental-health impairments as a result of her depression and anxiety. (Tr. 71-72). In support of this finding, the Agency stated that Claimant had a "moderate" limitation in the functional area of interacting with others, and mild limitations in the three remaining areas of mental functioning. (Tr. 72). Further, the State Agency noted that Claimant "does chores, shops, drives, manages finances, occasionally attends church and runs errands," and that Claimant "had normal concentration, persistence, pace, and recent memory at her consultative examination," although her "[s]ocial functioning was rated moderately impaired." (Tr. 72-73). As a result, the State Agency found that Claimant's stated symptom-related limitations were not fully consistent with her activities of daily living, and further noted the absence of "a medical opinion from any medical source" in support of Claimant's mental-health impairments. (Tr. 73). Dr. Binder's assessment found that Claimant was moderately limited in her ability to interact appropriately with the general public, but would likely "be capable of learning and performing 1-3 step tasks in a work-like setting." (Tr. 76). The State Agency did not make any finding about Claimant's ability to perform past relevant work; however, it did conclude that "all potentially applicable medical-vocational guidelines would direct a finding of 'not disabled' given the

6

individual's age, education, and residual functional capacity," and that as a result, Claimant "can adjust to other work." (Tr. 77). Finally, it determined that Claimant was *not* limited to unskilled work as a result of her impairments, and ultimately concluded that she was not disabled. *Id.*

On July 1, 2019, at the reconsideration level, the findings were substantially the same as on the initial review, with two notable exceptions. (Tr. 104-07). Relying in part on the opinion of Debra Lilly, Ph.D, it was determined that Claimant's mental-health impairments were *not* severe, on the grounds that the severity of functional limitations alleged "is not supported by the functional or medical evidence" in Claimant's file. (Tr. 105). Further, it was determined that Claimant had only a "mild" limitation in the mental-functioning area of interacting with others. (Tr. 104).

### 4. *Consultative Examinations*

Licensed psychologist Melinda Henline, M.A., evaluated Claimant on behalf of the State Agency in January 2019. (Tr. 610-15). Specifically, Ms. Henline conducted a clinical interview and mental-status examination of the Claimant and reviewed records from a January 30, 2017 office visit with Dr. Bowen as well as the August 16, 2016 and February 8, 2013 psychological examination notes of Dr. Bernard Gross and Dr. Matthew Hartsville, respectively. (Tr. 610-11). Ms. Henline noted that Claimant resides alone, and drove herself approximately 60 miles from her residence to the place of the examination in Charleston, West Virginia. *Id.* As to Claimant's complaints, Ms. Henline noted that Claimant reported significant symptoms of anxiety as well as short-term memory problems, and "a history of recurrent major depressive episodes with intervals of time in which her mood was relatively normal." (Tr. 611). Claimant further reported "persistently depressed mood every day for at least the past several weeks associated with loss of

interest in activities, unsatisfying sleep, helplessness, pessimism, feelings of worthlessness, failure, guilt, blame, crying episodes and anger." *Id.* Additionally, Claimant reported that her social functioning constituted going to the store and running errands once or twice per week; receiving visits from her parents and her daughter; spending time on Facebook; enjoying art; playing the piano on rare occasions; going to church occasionally; and going to a restaurant to eat on rare occasions. (Tr. 613-14). Claimant also reported that she has about three close friends, and that she last vacationed in 2015. *Id.* While Claimant reported that she does not have a checking account and does not pay bills, Ms. Henline found that Claimant appeared "capable of managing her funds" on her own. (Tr. 614). Finally, Claimant reported that her daily activities consist of arising at 11:00 a.m.; showering and dressing independently; participating in housework including cooking, laundry, dishes, and sweeping; drinking coffee and watching television; doing art projects; checking on her mother to see if she needed anything; eating once per day; and going to sleep by 2:00 a.m. *Id.*

Ms. Henline conducted a mental-status examination and noted Claimant was friendly and cooperative; her eye contact was within normal limits; her speech was coherent and connected; she was oriented to person, place, time, and circumstance, with understandable and connected thought processes; there was no evidence of delusions, paranoia, obsessive thoughts, or compulsive behaviors; there was no evidence of unusual perceptual experiences; judgment was within normal limits based on responses to comprehension questions; no evidence of unusual psychomotor behaviors; she denied suicidal and homicidal ideation; her immediate, recent, and remote memory capabilities were within normal limits; and her concentration, persistence, ability to remain on task, and pace were within normal limits. (Tr. 612-13). However, Claimant also appeared

slightly nervous, with a "mildly depressed" mood and a restricted affect; her insight was fair based on responses to questions regarding social awareness; and she was "moderately impaired" in her social functioning. (Tr. 611-13). Ms. Henline diagnosed Claimant with major depressive disorder, recurrent, moderate; generalized anxiety disorder; and severe cocaine and opioid use disorders, in remission. (Tr. 613).

Subsequently on June 26, 2019, licensed psychologist Kelly Robinson, M.A. completed a report reflecting the results of her mental-status examination of the Claimant on behalf of the State Agency. (Tr. 674-80). Claimant's remarks from the interview as well as Ms. Robinson's findings on examination are largely identical to those set forth in Ms. Henline's report, with a few exceptions. Claimant reported that on a typical day, she goes to bed at midnight and gets up at no specific time; when she gets up, she doesn't "do that much, if nobody comes over [she] . . . just mostly watch[es] television or get[s] on [her] phone, . . . walk[s] out on the porch, do[es] a little laundry or something, [and] light housework." (Tr. 678). Ms. Robinson also noted that Claimant's daily activities included taking her medications, talking with her boyfriend on the phone, texting with her daughter and niece, scrolling on Facebook, listening to music, eating, and playing games on her phone. *Id.* Several times per week, Claimant receives visits from her daughter and niece, and also walks next door to visit with her parents; additionally, she reported visiting with a neighbor and doing her laundry about twice a week. *Id.* Claimant reported that on a monthly basis, she dines out with her family, and goes to the grocery store and pharmacy with one of her family members. *Id.*

On examination, Ms. Robinson noted psychomotor agitation and a slow pace with delayed response times, a depressed mood and mildly restricted affect; a reserved but generally cooperative manner; fair grooming and personal hygiene; and ability to

maintain fair eye contact. (Tr. 677-78). Socially, Ms. Robinson noted Claimant had regular contact with her parents, daughter, and niece, as well as daily contact with her boyfriend. (Tr. 678). Ms. Robinson's stated diagnostic impression included persistent depressive disorder with persistent major depressive episode, moderate; social anxiety disorder; and generalized anxiety disorder. (Tr. 677).

### 5. *Vocational Expert Testimony*

Finally, during the administrative hearing on October 7, 2022, the ALJ employed a vocational expert ("VE") to aid her determination. (Tr. 56-61). The ALJ asked the VE to classify Claimant's past relevant work, and the VE testified that Claimant's position as a secondary-school teacher corresponded with #091.227-010 in the Dictionary of Occupational Titles, at a light level of exertion and with a Specific Vocational Preparation of seven, which is skilled work. *Id.* The VE opined that, based upon the restrictions set forth in the residual functional capacity ("RFC") offered by the ALJ, a hypothetical individual sharing the same characteristics could perform Claimant's past relevant work. *Id.* The VE also listed three other jobs available in significant numbers in the national economy that the hypothetical individual could perform. (Tr. 59-60).

However, the VE also opined that the hypothetical individual could not perform Claimant's past skilled work if he or she was limited to performing unskilled, routine tasks with a Specific Vocational Preparation of two. *Id.* The ALJ asked what tolerance employers would have for absences and off-task time, and the VE responded that employers would typically allow no more than one absence per month and no more than 10% of the workday off-task. (Tr. 60-61).

### C. Sequential Evaluation Process

An individual unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months" is considered to be disabled and thus eligible for benefits. 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has established a five-step sequential evaluation process to aid in this determination. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017). The ALJ proceeds through each step until making a finding of either "disabled" or "not disabled"; if no finding is made, the analysis advances to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The ultimate burden to prove disability lies on the claimant." *Preston v. Heckler*, 769 F.2d 988, 990 n.* (4th Cir. 1985); *see Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012) ("To establish eligibility for . . . benefits, a claimant must show that [s]he became disabled before h[er] [date last insured].").

At the first step in the sequential evaluation process, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the ALJ moves on to the second step. At the second step, the ALJ considers the combined severity of the claimant's medically determinable physical and mental impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The ALJ gleans this information from the available medical evidence. *See Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements will result in a finding of "not disabled."

20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

Next, at the third step, the ALJ determines whether the claimant's impairment or combination of impairments meets, or is medically equal to, the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "A claimant is entitled to a conclusive presumption that [s]he is impaired if [s]he can show that h[er] condition 'meets or equals the listed impairments.'" *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013) (quoting *Bowen v. City of New York*, 476 U.S. 467, 471 (1986)).

"If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity" ("RFC") before proceeding to the fourth step. *Mascio*, 780 F.3d at 635; *see* 20 C.F.R. §§ 404.1520(e), 416.920(e). The claimant's RFC reflects "her ability to perform work despite her limitations." *Patterson v. Comm'r*, 846 F.3d 656, 659 (4th Cir. 2017); *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (defining claimant's RFC as "the most the claimant can still do despite physical and mental limitations that affect h[er] ability to work" (alterations and internal quotation marks omitted)); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ "first identif[ies] the individual's functional limitations or restrictions and assess[es] his or her work-related abilities on a function-by-function basis," then "define[s] the claimant's RFC in terms of the exertional levels of work." *Lewis*, 858 F.3d at 862. "In determining a claimant's RFC, the ALJ must consider all of the claimant's medically determinable impairments . . . including those not labeled severe" as well as "all the claimant's symptoms, including pain, and the extent to which h[er] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Monroe*,

826 F.3d at 179 (alterations and internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a), 416.945(a).

When the claimant alleges a mental impairment, the first three steps of the sequential evaluation process and the RFC assessment are conducted using a "special technique" to "evaluate the severity of [the] mental impairment[]." 20 C.F.R. §§ 404.1520a(a), 416.920a(a); *see Patterson*, 846 F.3d at 659. Considering the claimant's "pertinent symptoms, signs, and laboratory findings," the ALJ determines whether the claimant has "a medically determinable mental impairment(s)" and "rate[s] the degree of functional limitation resulting from the impairment(s)" according to certain criteria. 20 C.F.R. §§ 404.1520a(b), 416.920a(b); *see id.* §§ 404.1520a(c), 416.920a(c). "Next, the ALJ must determine if the mental impairment is severe, and if so, whether it qualifies as a listed impairment." *Patterson*, 846 F.3d at 659; *see* 20 C.F.R. §§ 404.1520a(d), 416.920a(d). "If the mental impairment is severe but is not a listed impairment, the ALJ must assess the claimant's RFC in light of how the impairment constrains the claimant's work abilities." *Patterson*, 846 F.3d at 659.

After assessing the claimant's RFC, the ALJ at the fourth step determines whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); *Monroe*, 826 F.3d at 180. If she does not, then "the ALJ proceeds to step five." *Lewis*, 858 F.3d at 862.

The fifth and final step requires the ALJ to consider the claimant's RFC, age, education, and work experience in order to determine whether she can make an adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At this point, "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national

economy.'" *Lewis*, 858 F.3d at 862 (quoting *Mascio*, 780 F.3d at 635). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." *Id.* (quoting *Mascio*, 780 F.3d at 635). If the claimant can perform other work, the ALJ will find her "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If she cannot perform other work, the ALJ will find her "disabled." *Id.*

Applying the sequential evaluation process in this case, the ALJ determined at step one that Claimant had not engaged in substantial gainful activity since February 20, 2023, the alleged onset of her disability. (Tr. 17). At step two, the ALJ found that Claimant's degenerative-disc disease of the cervical and lumbar spine, chronic cervical and lumbar strain, hypertensive heart disease with heart failure, vascular insufficiency, lymphedema/mild swelling with retained metallic wire in the femoral vein, and status-post fracture of the left ankle constituted "severe" physical impairments. *Id.*

Applying the "special technique" to evaluate the severity of Claimant's mental impairments, the ALJ then considered the four broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (Tr. 17-18). As to the first functional area of understanding, remembering, or applying information, the ALJ found that Claimant "has mild limitation." (Tr. 17). Next, as to the second functional area of interacting with others, the ALJ found that Claimant "has mild limitation." (Tr. 18). Third, as to concentrating, persisting, or maintaining pace, the ALJ likewise found that Claimant "has mild limitation." *Id.* Finally, with respect to the fourth functional area of adapting or managing oneself, the ALJ likewise found that "the claimant has mild limitation." *Id.*

At step three, the ALJ found that Claimant's physical impairments, mental impairments, or a combination thereof, failed to meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18). Upon assessing Claimant's RFC, the ALJ relied upon the testimony of the Vocational Expert ("VE") to determine at step four that Claimant is able "to perform light work," subject to the following limitations:

> She can lift and carry 20 pounds occasionally and 10 pounds frequently, sit six hours, and stand and/or walk six hours in an eight-hour workday. She can never climb ladders, ropes, or scaffolds and occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant can occasionally reach in all directions. She can occasionally use foot controls bilaterally. The claimant can tolerate occasional exposure to extreme temperatures, vibration, and hazards.

(Tr. 20). Because the ALJ determined in the RFC that Claimant was unable to perform the full range of light work, the ALJ further relied upon the testimony of the VE to aid in her finding that Claimant was capable of performing her past relevant work as a secondary-school teacher. (Tr. 25). As a result, the ALJ concluded at the last step that Claimant was not under a disability during the relevant time period and thus is not entitled to benefits under either Title II or Title XVI of the Social Security Act. *Id.*

## II.    LEGAL STANDARD

This Court has a narrow role in reviewing the Commissioner's final decision to deny benefits: it "must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and it must be "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In

other words, this Court "looks to [the] administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Id.* (alteration omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* "In reviewing for substantial evidence, [this Court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Johnson*, 434 F.3d at 653 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Even if "reasonable minds [could] differ as to whether a claimant is disabled," this Court upholds the ALJ's decision if it is supported by substantial evidence. *Id.* (quoting *Craig*, 76 F.3d at 589).

### III.   ANALYSIS

In support of her request for remand in this § 405(g) action, Claimant contends that "the ALJ's RFC finding is defective because it fails to account for any mental limitations" despite the ALJ's determination that Claimant had mild limitations in the four broad areas of mental functioning. (ECF No. 7 at 6). In response, the Commissioner argues that the ALJ's finding that Claimant's mental-health impairments were non-severe is supported by substantial evidence and explained in a well-reasoned decision. (ECF No. 8 at 10). In support, the Commissioner highlights the ALJ's specific citations to the record wherein Claimant reported improvement with treatment, consistently had normal mental-status examinations, and engaged in a number of daily activities that involved concentrating or socializing. *Id.* (citing Tr. 17-18). Based upon these factors, the Commissioner concludes that the ALJ's determination is supported by substantial evidence and should be affirmed. *Id.*

In her reply brief, Claimant reiterates her argument that the ALJ's decision is facially inadequate because it focuses on normal examination findings, but omits any

16

discussion reflecting the ALJ's consideration of medical records showing abnormal findings. (ECF No. 9 at 2). While acknowledging that the ALJ is not "obligat[ed] to refer to every piece of evidence," and that merely reweighing the evidence is improper, Claimant explains that the ALJ's written decision "ignore[d] an entire line of evidence that . . . contradict[s] one of the key findings in her decision." *Id.* at 3-4.

The undersigned agrees. The record shows the State Agency found at the initial level of review that Claimant's mental impairments were severe, limiting her to learn and perform noncomplex tasks consisting of three steps or fewer in a work-like setting. (Tr. 71; 76; 85; 90). While the ALJ evidently did not agree with such a limitation, she provided no meaningful discussion to tether her conclusion—which found that Claimant's mental-health impairments were non-severe, with merely mild limitations—to substantial record evidence. The ALJ's written decision does not discuss her assessment of the consistency and supportability of the State Agency's determination on this ground; nor did the ALJ's written decision attempt to explain how this evidence squares with her finding of only a mild limitation. Likewise, the ALJ's omission of any mental-health limitations from her RFC is unsupported by any consideration of abnormal findings in Claimant's medical records—despite a not-insignificant amount of conflicting record evidence. For instance, medical records demonstrate that, on examination, Claimant was often noted to have a depressed and anxious mood; lethargic, restricted, sad, constricted, anxious, and/or flat affect; motor/psychomotor agitation; slow speech; poor or impaired judgment/insight; and/or disorganized thought process. (Tr. 496; 612; 617; 661; 677; 744; 2034; 2415; 2420; 2431; 2443; 2628; 2882; 2885; 2888).

The Commissioner expressly acknowledges that "ALJs must generally explain how conflicting evidence was reconciled to facilitate judicial review[.]" (ECF No. 8 at 15).

Indeed, although the ALJ need not "discuss functions that are irrelevant or uncontested," the Fourth Circuit specifically explained that remand may be appropriate where, as in the instant matter, an ALJ fails to assess "a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016) (quoting *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015)).

In response, the Commissioner argues that Claimant merely seeks an improper "re-weighing" of the evidence or unreasonably seeks to impose upon the ALJ an "impossible obligation to refer to every piece of evidence contained in the record." (ECF No. 8 at 15). In support, the Commissioner relies upon the Fourth Circuit's decision in *Thomas v. Berryhill*, 916 F.3d 307, 312 (4th Cir. 2020). However, the *Thomas* decision ordered remand for further administrative proceedings under similar circumstances. *See id.* In *Thomas*, the Fourth Circuit found that remand was proper because the ALJ "chose not to discuss what appears to be a substantial portion of the record relating to [the claimant's] treatment by mental-health specialists, even while citing curt mental-health notes made by doctors treating [the claimant's] foot ailment . . . . Right or wrong, that decision warrants some explanation." *Id.*

Here, just as in *Thomas*, The ALJ's RFC assessment did not impose any limitations with respect to Claimant's mental-health impairments, yet the ALJ's explanation sidesteps substantial conflicting evidence of abnormal mental-status-examination findings, while "cherry-picking" highly-selective references to normal mental-status-examinations from the record. (Tr. at 53–55). However, the ALJ's discussion largely sidestepped a substantial line of contradictory record evidence reflecting Claimant's abnormal mental-status examinations and other mental-health symptoms. *See Lewis v.*

*Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."). In fact, as Claimant highlights, the notation of slow pace from the consultative examination results is the *only* abnormal mental examination finding that the ALJ mentioned in her written decision. (ECF No. 9 at 2 n.2 (citing Tr. 18)). As a result of the ALJ's failure to reconcile this conflicting evidence with her findings, the Court is missing a key piece of the puzzle that is required to facilitate meaningful judicial review.

Furthermore, the ALJ's selective reliance upon periodically "normal" examination findings without a fulsome discussion of conflicting evidence is particularly concerning because it arises in the context of mental-health impairments—including a diagnosis of recurring depressive episodes. The Fourth Circuit has expressly stated that mental impairments tend to be characterized by waxing and waning symptoms—and an ALJ is obligated to consider the effect of a claimant's mental-health impairments over time in a sustained, full-time work environment. *Testamark v. Berryhill*, 736 Fed. App'x 395, 398 (4th Cir. 2018). This is a particularly-apt inquiry when the question is whether Claimant is able to perform her past *skilled* work. *See* SSR 85-15 (explaining that mental impairments are "generally more serious" when the issue is whether a claimant can perform skilled jobs).

The ALJ's description of Claimant's activities of daily living as "essentially normal" is likewise concerning in this context—particularly when the ALJ's references to record evidence are not fully accurate. For instance, the ALJ states in her written decision that Claimant reports going to the grocery store and shopping. (Tr. 23-24). However, Claimant's actual statement was more nuanced and restricted than as characterized by

the ALJ; Claimant reported that she goes grocery shopping once every one-to-two weeks, that she does not enter the store if it is crowded, and she is usually accompanied by a family member because going outside of the house on her own makes her nervous. (Tr. 103-399). *See Totten v. Califano*, 624 F.2d 10, 12 (4th Cir. 1980) (disfavoring evidence of sporadic, transitory, or restricted activity as the basis for finding of substantial gainful activity). Similarly, the ALJ stated that Claimant "dines out with her family," "visits with *neighbors*," and "enjoys . . . playing the piano" (Tr. 24-25), but the ALJ sidestepped the nuances that Claimant reported she *rarely* dines out with her family, that she visits with her parents and *one neighbor*, and that she *used to* play piano but rarely does so now. (Tr. 103). Further, the ALJ's passing observations that Claimant "occasionally attends church," and "watches television"—activities requiring little more than passive observation—have no facially-evident logical connection to the effect of a claimant's mental-health impairments over time in a sustained, full-time work environment, performing skilled work. *See* 20 C.F.R. § 404.1572(c) ("generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.").

In short, the undersigned **FINDS** that the ALJ's written decision, in determining that Claimant was able to perform her past relevant work, overlooked an entire line of evidence, did not accurately describe Claimant's activities of daily living, and failed to explain the rationale and evidentiary basis for her findings. The written decision thus frustrates meaningful review, as the Court is unable to discern whether the ALJ's determination is supported by substantial evidence. While it is strictly the province of the ALJ to resolve conflicting evidence, the ALJ is obligated to build "an accurate and logical bridge" between the evidence and her findings. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th

Cir. 2016). Without a discussion of the conflicting evidence, a vital piece of that bridge is missing. As Claimant points out, the ALJ's shortcomings are not merely harmless; because Claimant was 55 years old on the date of the decision by the ALJ, and because Claimant is limited to light work, she would have been entitled to a "disabled" determination by operation of the Social Security Administration's "grid rules" if the ALJ had found she was not able to perform her past skilled work or to transfer her skills to other work. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2, Grid Rule § 202.06. Accordingly, remand for further administrative proceedings is required.

### IV.    CONCLUSION

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT** Claimant's request to reverse the Commissioner's decision (ECF No. 7), **DENY** the Commissioner's request to affirm his decision (ECF No. 8), **REVERSE** the final decision of the Commissioner, and **REMAND** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED** and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from the date of the filing of this Proposed Findings and Recommendation to file with the Clerk of this Court specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown. Copies of any objections shall be served on opposing parties and provided to Judge Goodwin.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals. 28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

ENTERED:   August 27, 2024

Dwane L. Tinsley
United States Magistrate Judge